IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALAS DIVISION

| | | |
|---|---|---|
| AMIT PATEL | § | |
| | § | |
| Plaintiff, | § | |
| | § | Case No. 3:19-CV01399-N |
| vs. | § | |
| | § | (Removed from 160th Judicial District |
| ASTON MARTIN LAGONDA OF | § | Dallas County, Texas |
| NORTH AMERICA, INC. | § | Cause No. DC-19-06522) |
| | § | |
| Defendant. | § | |

# PLAINTIFF'S 1ST AMENDED PETITION AND REQUEST FOR RULE 194 DISCLOSURES

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Plaintiff, AMIT PATEL, complaining of Defendant, ASTON MARTIN LAGONDA OF NORTH AMERICA INC., and for cause of action would respectfully show the Court the following:

## I. DISCOVERY LEVEL

1.  Discovery is intended to be conducted under Level 1 of Rule 190.2 of the Texas Rules of Civil Procedure.

## II. PARTIES

2.  Plaintiff, AMIT PATEL ("Plaintiff"), is an adult individual and legal resident of the State of Texas, residing at 107 Crossroads Circle, Westworth Village, TX 76114.

3.  Defendant, ASTON MARTIN LAGONDA OF NORTH AMERICA INC., ("Defendant"), is a business corporation qualified to do and regularly conducting business in the State of Texas and is engaged in the manufacture, sale, and distribution of motor vehicles and related equipment and services. Defendant is also in the business of marketing, supplying and

selling written warranties to the public at large through a system of authorized dealerships, including Aston Martin of Dallas ("Seller"). Defendant can be served at its local residence c/o CT Corporation System, 1999 Bryan Street, Suite 900, Dallas TX 75201-3136.

### III. JURISDICTION AND VENUE

4. Both jurisdiction and venue are proper in Dallas County, Texas, pursuant to the Texas Civil Practice & Remedies Code. Venue is proper because all or a substantial part of the events or omissions giving rise to the claim occurred in Dallas County, Texas. *See* Tex. Civ. Prac. & Rem. Code §15.002(a)(1). Further, venue is proper because the subject vehicle was purchased and/or repaired in Dallas County.

5. This Court has jurisdiction over the controversy because the damages are within the jurisdictional limits of the Court and there exists personal jurisdiction because Defendant's acts constitute doing business in this state. *See* Tex. Civ. Prac. & Rem. Code §17.042.

### IV. NO BASIS FOR REMOVAL

6. There is no basis for removal of this case to federal court. Specifically, there is no diversity and/or subject matter jurisdiction pursuant to 28 U.S.C. §1332(a) and 15 U.SC. §2310(d)(3)(B), as the damages in this matter are not greater than the $75,000 minimum amount in controversy required for diversity jurisdiction or the $50,000 minimum amount in controversy required for subject matter jurisdiction. Plaintiff is not asserting a claim at any time against any Defendant who was acting under any officer of the United States or any such agency thereof, or person acting under him, or for any act under color of such office, or against any Defendant during a time period when its facility was a federal enclave.

### V. BACKGROUND AND FACTS

7. On or about August 20, 2018, Plaintiff leased from Ally Financial ("Lessor") a

2018 Aston Martin DB11 ("Aston Martin DB11"), manufactured by Defendant, Vehicle Identification No. SCFRMFAV8JGL03806, for valuable consideration (See copy of Plaintiff's Lease Agreement Contract, attached hereto as Exhibit "A").

8. The gross capitalized cost of the Aston Martin DB11, not including any taxes, financing, or other charges, totaled $219,859.21.

9. Prior to or contemporaneous to Plaintiff's lease of the Aston Martin DB11, Seller sold the Aston Martin DB11 to Lessor for valuable consideration.

10. Lessor purchased the Aston Martin DB11 for purposes other than resale.

11. Lessor purchased the Aston Martin DB11 to lease to Plaintiff.

12. In consideration for the leasing of the Aston Martin DB11, Defendant issued and supplied to Plaintiff a written warranty that included a three 3-year (36 months) bumper to bumper warranty, a 3-year (36 months) powertrain warranty, as well as other standard warranties fully outlined in Defendant's Warranty booklet.

13. At the time Lessor purchased the Aston Martin DB11 from Seller, the Aston Martin DB11 had been driven approximately sixty-five (65) miles and was covered by Defendant's written warranty described above.

14. Lessor would not have purchased the Aston Martin DB11 without Defendant's written warranty described above. Additionally, Plaintiff would not have agreed to lease the Aston Martin DB11 without knowledge that Plaintiff would be able to enforce Defendant's written warranty.

15. On or about August 20, 2018, and at approximately sixty-five (65) miles on the Aston Martin DB11, Lessor assigned its rights in Defendant's written warranty to Plaintiff. The transfer of Defendant's written warranty occurred during the duration of said warranty.

16. On or about August 20, 2018, Plaintiff took possession of the Aston Martin DB11, and shortly thereafter, experienced various defects listed below that substantially impair the use, value and/or safety of the Aston Martin DB11.

17. The defects described below violate the Defendant's written warranty, as well as the implied warranty of merchantability.

18. As a result of these defects, Plaintiff delivered the Aston Martin DB11 to Defendant, through its authorized dealerships, for repair on numerous occasions.

19. Defendant, through its authorized dealerships, performed repairs on the Aston Martin DB11 that were covered by Defendant's written warranty.

20. Defendant allowed Plaintiff to enforce its written warranty.

21. Plaintiff avers that the Aston Martin DB11 has been subject to repair at least one (1) time for the same defect, and that the defect remains uncorrected.

22. Plaintiff brought the Aston Martin DB11 to Seller, and/or other authorized service dealers of Defendant, for various defects, including but not limited to the following:

- Defective engine as evidenced by repeated illumination of check engine light, rough idle, vehicle intermittently stalls, noise;
- Defective electrical system as evidenced by rattle from rear seat area, passenger seat heating/cooling turns on by itself intermittently, alarm goes off intermittently when driver door opened, driver door easy access does not work and key fob must be used to open door, illumination of key not detected indicator when key is inside car and doors will not open, drivers windows closes slower than passenger window, driver's window will not roll all the way up;
- Defective brake system as evidenced by excessive squeak noise; and
- Any additional defects, whether or not they are contained on any dealer repair orders.

23. Plaintiff provided Defendant, through Seller, and/or other authorized dealers of Defendant, sufficient opportunities to repair the Aston Martin DB11.

4

24. Defendant, through its authorized dealers, was unable and/or failed to repair the Aston Martin DB11 within a reasonable number of attempts.

25. The defects experienced by Plaintiff could not have been reasonably discovery by Plaintiff prior to Plaintiff's acceptance of the Aston Martin DB11.

26. As a result of these defects, Plaintiff revoked acceptance of the Aston Martin DB11 in writing on April 4, 2018 (*see* copy of April 4, 2018 correspondence, attached hereto as Exhibit "B").

27. At the time of revocation, the Aston Martin DB11 was in substantially the same condition as at delivery except for damage caused by its own defects and ordinary wear and tear.

28. Defendant refused Plaintiff's demand for revocation and has refused to provide Plaintiff with the remedies to which the Plaintiff is entitled upon revocation.

29. The Aston Martin DB11 remains in a defective and unmerchantable condition and continues to exhibit the above-mentioned defects.

30. Plaintiff has been and will continue to be financially damaged due to Defendant's failure to comply with the provisions of its written warranty and its failure to provide Plaintiff with a merchantable Aston Martin DB11.

## VI.  FIRST CAUSE OF ACTION: BREACH OF WRITTEN WARRANTY PURSUANT TO THE MAGNUSON-MOSS WARRANTY ACT

31. Plaintiff re-alleges and incorporates by reference as though fully set forth herein, paragraphs 1-30 of this Petition.

32. Plaintiff is a lessee of a consumer product, who received the Aston Martin DB11 during the duration of a written warranty period applicable to the Aston Martin DB11, and who is entitled by the terms of the written warranty to enforce the obligations of said warranty against Defendant.

33. Defendant is a person/entity engaged in the business of making a consumer product directly available to Plaintiff.

34. Seller is an authorized dealership/agent of Defendant and is designated to perform repairs on vehicles covered under Defendant's written warranty.

35. The Magnuson-Moss Warranty Act, Chapter 15 U.S.C.A., Section 2301, et. seq. ("Warranty Act") is applicable to Plaintiff's Complaint, in that the Aston Martin DB11 was manufactured and leased after July 4, 1975 and costs in excess of ten dollars ($10.00).

36. Plaintiff's lease of the Aston Martin DB11 was accompanied by a written warranty for any defects in material or workmanship, which comprises an undertaking in writing and in connection with the lease of the Aston Martin DB11, to repair the Aston Martin DB11 or take other remedial action free of charge to Plaintiff, with respect to the Aston Martin DB11, if the Aston Martin DB11 failed to meet the specifications set forth in said undertaking.

37. Defendant's written warranty was the basis of the bargain of the sale between Seller and Lessor, and the basis of the bargain of the lease between Plaintiff and Lessor.

38. The lease of Plaintiff's Aston Martin DB11 was induced by, and Plaintiff relied upon, Defendant's written warranty.

39. Plaintiff has met all of his obligations and preconditions as provided in Defendant's written warranty.

40. As a direct and proximate result of Defendant's failure to comply with its written warranty, Plaintiff has suffered damages; and in accordance with 15 U.S.C. § 2310(d), Plaintiff is entitled to bring suit for such damages and other legal and equitable relief.

41. WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

    a. Monetary relief of $49,999 or less (exclusive of court costs and attorneys' fees), which represents Plaintiff's actual damages, including loss of use as calculated by the reasonable rental value of a substitute automobile,

                    collateral charges, finance charges, and other incidental and consequential damages;

    b.    Non-monetary relief;

    c.    All reasonable attorneys' fees, witness fees and all court costs and other fees incurred; and

    d.    All the other relief to which the Plaintiff may be justly entitled to.

## VII.  SECOND CAUSE OF ACTION: BREACH OF IMPLIED WARRANTY PURSUANT TO THE MAGNUSON-MOSS WARRANTY ACT

42.    Plaintiff re-alleges and incorporates by reference as though fully set forth herein, paragraphs 1-30 of this Petition.

43.    The Aston Martin DB11 leased by Plaintiff was subject to an implied warranty of merchantability, as defined in 15 U.S.C. § 2301(7), running from Defendant to Plaintiff.

44.    Defendant is a supplier of consumer goods as a person/entity engaged in the business of making a consumer product directly available to Plaintiff.

45.    Defendant is prohibited from disclaiming or modifying any implied warranty when making a written warranty to the consumer or when Defendant has entered into a contract in writing within ninety (90) days of a purchase to perform services relating to the maintenance or repair of a motor vehicle.

46.    Pursuant to 15 U.S.C. § 2308, Plaintiff's Aston Martin DB11 was impliedly warranted to be substantially free of defects in both material and workmanship and thereby fit for the ordinary purpose for which the Aston Martin DB11 was intended.

47.    The Aston Martin DB11 was warranted to pass without objection in the trade under the contract description and was required to conform to the descriptions of the Aston Martin DB11 contained in the contracts and labels.

48.    The above described defects in the Aston Martin DB11 render the Aston Martin DB11 unfit for the ordinary purpose for which the Aston Martin DB11 was intended.

49. As a result of the breach of implied warranty by Defendant, Plaintiff has suffered and continues to suffer various damages.

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

a. Monetary relief of $49,999 or less (exclusive of court costs and attorneys' fees), which represents Plaintiff's actual damages, including loss of use as calculated by the reasonable rental value of a substitute automobile, collateral charges, finance charges, and other incidental and consequential damages;
b. Non-monetary relief;
c. All reasonable attorneys' fees, witness fees and all court costs and other fees incurred; and
d. All the other relief to which the Plaintiff may be justly entitled to.

## VIII.  DEMAND FOR JURY TRIAL

Plaintiff hereby request a trial by jury of all issues of fact in this case and herewith tenders the jury fee.

## IX.  REQUEST FOR DISCLOSURES

Pursuant to TEX. R. CIV. P. 194, Defendant is requested to disclose to Plaintiff, no later than fifty (50) days after service of this request, the information and all documents and materials described in Rule 194.2(a) through (l) to be produced at the offices of Allen Stewart, P.C., 325 N. St. Paul Street, Suite 4000, Dallas, Texas 75201.

Respectfully Submitted,

By: _____
Andrew Ross

**ALLEN STEWART, P.C.**
Andrew Ross, TX Bar No. 24079246
Scott R. Frieling, TX Bar No. 24012659
325 N. St. Paul St., Suite 4000
Dallas, Texas 75201
(214) 965-8700 Office
(214) 965-8701 Facsimile
aross@allenstewart.com

sfrieling@allenstewart.com
*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that he served a copy of the foregoing document to the following, via electronic mail and fax, on June 19, 2019:

Jeremiah J. Wood
BAKER & HOSTETLER, LLP
200 Civic Center Drive, Ste. 1200
Columbus, OH 43215
(614) 462-2654 – Fax
jjwood@bakerlaw.com
*Attorneys for Defendant*

By: */s/ Andrew Ross*
Andrew Ross

**EXHIBIT A**

# ally SMART LEASE

| Lessee (and Co-Lessee) ("You") | | Lessor |
|---|---|---|
| Name and address, including county<br>AMIT PATEL<br>1309 E ALLEGRIE DR<br>INVERNESS FL 34453 | Garaging address (if different)<br>N/A<br><br>Principal driver (if business use)<br>N/A | ASTON MARTIN OF DALLAS<br>5333 LEMMON AVE<br>DALLAS TX 75209 |

This is an agreement to lease a vehicle. This is not a purchase agreement. You are not buying the vehicle. By signing this lease, you agree to everything on the front and back.

"We," "us," and "our" refer to Lessor named above and any assignee. An "assignee" is a person to whom this lease is assigned (if it is assigned). _____ (Assignee).

☐ If this box is checked, Lessor will assign this lease and sell the vehicle to _____
☐ If this box is checked, Lessor intends not to assign this lease.

**Monthly Payment Lease.** If your payment schedule shows monthly scheduled payments (Section 2(a)), your lease is a monthly payment lease.
**Single Payment Lease.** If your payment schedule shows a single scheduled payment (Section 2(b)), your lease is a single payment lease.

## The Vehicle You Are Leasing

| New/Used | Year | Make & Model | Body Style | Vehicle ID # | Mileage | Primary Use: Personal, unless otherwise indicated below |
|---|---|---|---|---|---|---|
| NEW | 2018 | ASTON MAR DB11 | DB11 | SCFRMFAV8JGL03806 | 65 | ☐ Commercial, Business, or Agricultural |

Dealer Installed Options __N/A__      GVW (if truck) __N/A__      ☐ Public Conveyance

## Federal Consumer Leasing Act Disclosures

| 1. Amount Due at Lease Signing or Delivery (Itemized Below)*<br>$ 3265.94 | 2(a). Monthly Scheduled Payments<br>Your first monthly payment of $ 2750.00 is due on 08/20/2018, followed by 35 payments of $ 2750.00 due on the 20th of each month. The total of your monthly payments is $ 99000.00.<br><br>2(b). Single Scheduled Payment<br>Your single payment of $ N/A is due on N/A. This is the total of your scheduled payments. | 3. Other Charges (not part of your scheduled payment)<br>Disposition fee (if you do not purchase the vehicle and we do not waive the fee under Section 13) $ N/A<br>N/A $ N/A<br><br>Total $ N/A | 4. Total of Payments (The amount you will have paid by the end of the lease.)<br>$ 99515.94 |
|---|---|---|---|

### * Itemization of Amount Due at Lease Signing or Delivery

**5. Amount Due at Lease Signing or Delivery:**
- a. Capitalized cost reduction . . . . . . . . . . $ 515.94
- b. First monthly payment . . . . . . . . . . . . . $ 2750.00
- c. Single scheduled payment . . . . . . . . . $ N/A
- d. Refundable security deposit . . . . . . . . $ 0.00
- e. Title fees . . . . . . . . . . . . . . . . . . . . . . . . . $ N/A
- f. Registration fees . . . . . . . . . . . . . . . . . . $ N/A
- g. Sales/use tax . . . . . . . . . . . . . . . . . . . . . $ N/A
- h. N/A  $ N/A
- i. N/A  $ N/A
- j. N/A  $ N/A
- k. Total . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 3265.94

**6. How the Amount Due at Lease Signing or Delivery will be paid:**
- a. Net trade-in allowance . . . . . . . . . . . . . . . . $ N/A
- b. Rebates and noncash credits . . . . . . . . . . $ N/A
- c. Amount to be paid in cash . . . . . . . . . . . . . $ 3265.94
- d. Total . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 3265.94

### 7. Your scheduled payment is determined as shown below:

- a. **Gross capitalized cost.** The agreed upon value of the vehicle ($ 219859.21) and any items you pay for over the lease term (such as service contracts, insurance, and any outstanding prior credit or lease balance) . . . . . . . . . . . . . . . . $ 222253.17
- b. **Capitalized cost reduction.** The amount of any net trade-in allowance, rebate, noncash credit, or cash you pay that reduces the gross capitalized cost . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . − $ 515.94
- c. **Adjusted capitalized cost.** The amount used in calculating your base scheduled payment . . . . . . . . . . . . . . . . . . . = $ 221737.23
- d. **Residual value.** The value of the vehicle at the end of the lease used in calculating your base scheduled payment . . . . − $ 149564.28
- e. **Depreciation and any amortized amounts.** The amount charged for the vehicle's decline in value through normal use and for other items paid over the lease term . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . = $ 72172.95
- f. **Rent charge.** The amount charged in addition to the depreciation and any amortized amounts . . . . . . . . . . . . . . . . . + $ 21223.29
- g. **Total of base scheduled payment(s).** The depreciation and any amortized amounts plus the rent charge . . . . . . . . . = $ 93396.24
- h. **Lease payments.** The number of payments in your lease . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ÷ 36
- i. **Base scheduled payment** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . = $ 2594.34
- j. **Sales/use tax (estimated)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . + $ 155.66
- k. N/A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . + $ N/A
- l. **Total scheduled payment** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . = $ 2750.00

**Early Termination.** You may have to pay a substantial charge if you end this lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the lease is terminated. The earlier you end the lease, the greater this charge is likely to be.

**Excessive Wear and Use.** You may be charged for excessive wear based on our standards for normal use and for mileage in excess of 10008 miles per year at the rate of $ 1.04 per mile.

**Purchase Option** ...

Scanned with CamScanner

a. Capitalized cost reduction .......... $ 2750.00
b. First monthly payment ............. $ N/A
c. Single scheduled payment ......... $ 0.00
d. Refundable security deposit ....... 
e. Title fees ......................... $ N/A
f. Registration fees .................. $ N/A
g. Sales/use tax ..................... $ N/A
h. N/A  $ N/A
i. N/A  $ N/A
j. N/A  $ N/A
k. Total ............................. $ 3265.94

b. Rebates and ...
c. Amount to be paid in cash

d. Total ........... $ 3265.94

7. **Your scheduled payment is determined as shown below:**

a. **Gross capitalized cost.** The agreed upon value of the vehicle ($ 219859.21 ) and any items you pay for over the lease term (such as service contracts, insurance, and any outstanding prior credit or lease balance) ......... $ 222253.17
b. **Capitalized cost reduction.** The amount of any net trade-in allowance, rebate, noncash credit, or cash you pay that reduces the gross capitalized cost .......... − $ 515.94
c. **Adjusted capitalized cost.** The amount used in calculating your base scheduled payment ......... = $ 221737.23
d. **Residual value.** The value of the vehicle at the end of the lease used in calculating your base scheduled payment .... − $ 149564.28
e. **Depreciation and any amortized amounts.** The amount charged for the vehicle's decline in value through normal use and for other items paid over the lease term ......... = $ 72172.95
f. **Rent charge.** The amount charged in addition to the depreciation and any amortized amounts .......... + $ 21223.29
g. **Total of base scheduled payment(s).** The depreciation and any amortized amounts plus the rent charge ......... = $ 93396.24
h. **Lease payments.** The number of payments in your lease ......... ÷ 36
i. **Base scheduled payment** .......... = $ 2594.34
j. **Sales/use tax (estimated)** ......... + $ 155.66
k. N/A ......... + $ N/A
l. **Total scheduled payment** ......... = $ 2750.00

**Early Termination.** You may have to pay a substantial charge if you end this lease early. **The charge may be up to several thousand dollars.** The actual charge will depend on when the lease is terminated. The earlier you end the lease, the greater this charge is likely to be.

8. **Excessive Wear and Use.** You may be charged for excessive wear based on our standards for normal use and for mileage in excess of 10008 miles per year at the rate of $ 1.00 per mile.
9. **Purchase Option at End of Lease Term.** You have an option to buy the vehicle at the end of the lease term for $ 149614.28 , plus official fees and taxes.
10. **Other Important Terms.** See your lease documents for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, and insurance.

11. **Itemization of Gross Capitalized Cost.**
a. Agreed upon value of the vehicle .......... $ 219859.21
b. Ally administrative fee .................... + $ 1660.00
c. License/registration/title fees ............ + $ 550.00
d. Sales tax ............................... + $ 30.96
e. Other tax (describe) N/A ............... + $ N/A
f. Optional service contract ................ + $ N/A
g. Optional maintenance contract .......... + $ N/A
h. Optional life insurance .................. + $ N/A
i. Optional disability insurance ............. + $ N/A
j. DOC FEE ............................... + $ 153.00
k. N/A ................................... + $ N/A
l. Gross Capitalized Cost ................. = $ 222253.17

12. **Official Fees and Taxes.** You will pay all government license, title, registration, testing, and inspection fees for the vehicle. You will pay all taxes on the lease, payments due under the lease, or the vehicle that the government levies on you, the vehicle, or us (except our net income taxes). We may change your monthly payment if taxes change. We may bill you separately for official fees and taxes.
**Estimated Total Official Fees and Taxes You Must Pay During Lease.** $ 6184.72
The actual total of official fees and taxes may be higher or lower depending on tax rates in effect or the vehicle value when a fee or tax is assessed.

13. **Disposition Fee Waiver.** We will waive any Disposition Fee shown in Section 3 if, at the time this lease ends, you enter into a motor vehicle lease or installment sale contract that the dealer assigns to Ally.

14. **Lease Term:** 36 months.

15. **Total Allowed Mileage.** The total mileage allowed on the odometer at lease end is 30089 miles.
**Extra Miles.** The total allowed mileage includes 30024 extra miles that you are buying at $ N/A per mile. If this lease ends on or after the start of the next-to-last monthly period, we will give you a credit for each unused extra mile you bought. **There will be no credit if the lease ends earlier, you buy the vehicle, or the vehicle is a total loss.**

16. **Required Vehicle Insurance Information.** You affirm that liability and physical damage policies that meet our requirements (see the other side) are in force on the date of this lease as follows:

Insurance company name: _____
Insurance agency name: _____
Agency address: _____
Agency phone no.: _____
Agent's name: _____
Policy no.: _____
Deductibles: Collision $ 0.00  Comprehensive $ 0.00

17. **WARRANTY AND EXCLUSION OF WARRANTY.** You have the benefit of the standard manufacturer's warranty unless this box is checked. ☐

☐ If this box is checked, you have the benefit of the following warranty:
N/A

Warranty papers that are separate from this lease state any coverage limits. The law gives you a warranty that the vehicle conforms to the description in this lease. **THERE ARE NO OTHER EXPRESS WARRANTIES ON THE VEHICLE.**

The following exclusion and limitation of implied warranties does not apply if: (1) you signed this lease in Massachusetts and you are an individual leasing for personal, family, or household use; (2) you signed this lease in Vermont and the vehicle is new; or (3) you signed this lease in West Virginia and you are an individual leasing for a personal, family, household, or agricultural purpose: Unless Lessor makes a written warranty or enters into a service contract within 90 days from the date of this lease, **LESSOR MAKES NO IMPLIED WARRANTY OF MERCHANTABILITY AND THERE IS NO IMPLIED WARRANTY THAT THE VEHICLE IS FIT FOR A PARTICULAR PURPOSE.** If Lessor makes a written warranty or enters into a service contract within 90 days from the date of the lease, then any implied warranty of merchantability and any warranty that the vehicle is fit for a particular purpose are limited in duration to the longer of the term of the written warranty or the term of the service contract.

18. **Optional Insurance, Service Contracts, and Maintenance Agreements.** We do not require any of the insurance, products, or services in this section. Your decision to buy them or not buy them is not a factor in our decision to approve this lease. We will try to get any optional insurance coverage(s) that you initial below. A notice you receive when you sign this lease describes the coverage(s) in greater detail. Life insurance and disability insurance may not cover taxes and other amounts due besides the base monthly payment.

Scanned with CamScanner

8. Excessive wear and ... miles per year at the rate of $ ___1.00___ per mile.
9. **Purchase Option at End of Lease Term.** You have an option to buy the vehicle at the end of the lease term for $ __149614.28__ plus official fees and taxes.
10. **Other Important Terms.** See your lease documents for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, and insurance.

11. **Itemization of Gross Capitalized Cost.**
    a. Agreed upon value of the vehicle .......... $ 219859.21
    b. Ally administrative fee .................. + $ 1660.00
    c. License/registration/title fees .......... + $ 550.00
    d. Sales tax ......... N/A ................. + $ 30.96
    e. Other tax (describe) ___N/A___ .......... + $ N/A
    f. Optional service contract ............... + $ N/A
    g. Optional maintenance contract ........... + $ N/A
    h. Optional life insurance ................. + $ N/A
    i. Optional disability insurance ........... + $ N/A
    j. __DOC FEE__ ........................... + $ 153.00
    k. __N/A__ ............................... + $ N/A
    l. Gross Capitalized Cost .................. = $ 222253.17

12. **Official Fees and Taxes.** You will pay all government license, title, registration, testing, and inspection fees for the vehicle. You will pay all taxes on the lease, payments due under the lease, or the vehicle that the government levies on you, the vehicle, or us (except our net income taxes). We may change your monthly payment if taxes change. We may bill you separately for official fees and taxes.
    Estimated Total Official Fees and Taxes You
    Must Pay During Lease.      $ ___6184.72___
    The actual total of official fees and taxes may be higher or lower depending on tax rates in effect or the vehicle value when a fee or tax is assessed.

13. **Disposition Fee Waiver.** We will waive any Disposition Fee shown in Section 3 if, at the time this lease ends, you enter into a motor vehicle lease or installment sale contract that the dealer assigns to Ally.

14. **Lease Term:** ___36___ months.

15. **Total Allowed Mileage.** The total mileage allowed on the odometer at lease end is ___30089___ miles.
    **Extra Miles.** The total allowed mileage includes ___30024___ extra miles that you are buying at $ ___N/A___ per mile. If this lease ends on or after the start of the next-to-last monthly period, we will give you a credit for each unused extra mile you bought. **There will be no credit if the lease ends earlier, you buy the vehicle, or the vehicle is a total loss.**

16. **Required Vehicle Insurance Information.** You affirm that liability and physical damage policies that meet our requirements (see the other side) are in force on the date of this lease as follows:
    Insurance company name: _____
    Insurance agency name: _____
    Agency address: _____
    Agency phone no.: _____
    Agent's name: _____
    Policy no.: _____
    Deductibles: Collision $ ___0.00___ Comprehensive $ ___0.00___

17. **WARRANTY AND EXCLUSION OF WARRANTY.** You have the benefit of the standard manufacturer's warranty unless this box is checked. ☐
    ☐ If this box is checked, you have the benefit of the following warranty:
    ___N/A___
    Warranty papers that are separate from this lease state any coverage limits. The law gives you a warranty that the vehicle conforms to the description in this lease. **THERE ARE NO OTHER EXPRESS WARRANTIES ON THE VEHICLE.**
    The following exclusion and limitation of implied warranties does not apply if: (1) you signed this lease in Massachusetts and you are an individual leasing for personal, family, or household use; (2) you signed this lease in Vermont and the vehicle is new; or (3) you signed this lease in West Virginia and you are an individual leasing for a personal, family, household, or agricultural purpose: **Unless Lessor makes a written warranty or enters into a service contract within 90 days from the date of this lease, LESSOR MAKES NO IMPLIED WARRANTY OF MERCHANTABILITY, AND THERE IS NO IMPLIED WARRANTY THAT THE VEHICLE IS FIT FOR A PARTICULAR PURPOSE.** If Lessor makes a written warranty or enters into a service contract within 90 days from the date of this lease, then any implied warranty of merchantability and any warranty that the vehicle is fit for a particular purpose are limited in duration to the longer of the term of the written warranty or the term of the service contract.

18. **Optional Insurance, Service Contracts, and Maintenance Agreements.** We do not require any of the insurance, products, or services listed in this section. Your decision to buy them or not buy them is not a factor in our decision to approve this lease. We will try to get any optional insurance coverage(s) that you initial below. A notice you receive when you sign this lease describes the coverage(s) in greater detail. Life insurance and disability insurance may not cover taxes and other amounts due besides the base monthly payment.

| Optional Insurance | Coverage | Charge or Premium | Provider | By initialing below, you indicate you want the insurance |
|---|---|---|---|---|
| Life Insurance (Monthly Payment Lease Only) | ___ Lessee ___ Co-Lessee Coverage is for lease term Coverage limit $ ___N/A___ | $ ___N/A___ | N/A | Lessee/Co-Lessee initials ___/___ |
| Disability Insurance (Monthly Payment Lease Only) | Lessee Coverage is for lease term Monthly Coverage limit $ ___N/A___ | $ ___N/A___ | N/A | Lessee/Co-Lessee initials ___/___ |
| N/A | ___N/A___ Months ___N/A___ Miles Coverage limit $ ___N/A___ | $ ___N/A___ | N/A | Lessee/Co-Lessee initials ___/___ |

| Other Optional Product or Service | Term | | |
|---|---|---|---|
| N/A | ___N/A___ Months, | ___N/A___ Miles | |
| N/A | ___N/A___ Months, | ___N/A___ Miles | |

**Signatures**

**THIS IS THE ENTIRE AGREEMENT.** This lease, including the front and back of this form, contains the entire agreement between you and us relating to the lease of the vehicle. Any change to this lease must be in writing, and we must sign it. No oral changes are binding.
LESSEE: X ___[signature]___       BY: X _____      CO-LESSEE: X ___N/A___
We may delay or refrain from enforcing any of our rights under this lease without losing them.
**NOTICE TO LESSEE. 1. DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT. 2. YOU ARE ENTITLED TO A COPY OF THIS AGREEMENT.**
YOU AGREE TO THE TERMS OF THIS LEASE. YOU CONFIRM THAT BEFORE YOU SIGNED THIS LEASE, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT.
YOU CONFIRM THAT YOU SIGNED THIS AGREEMENT AND RECEIVED A COPY AT ___DALLAS___ ___TX___ ON ___08___ ___20___ ___2018___
                                                                 (city)      (state)    (month) (day) (year)
LESSEE: X ___[signature]___       BY: X _____      CO-LESSEE: X ___N/A___

Lessor agrees to the following: (1) Lessor accepts this lease. (2) If a party is identified in this lease as the intended assignee ("Intended Assignee"), Lessor (i) assigns all right, title, and interest in this lease to the Intended Assignee, under the terms of the Lease Plan Dealer Agreement in effect from time to time with the assignee (the "Dealer Agreement"), and (ii) assigns all right, title, and interest in the leased vehicle to the Intended Assignee, or its designee, under the terms of the Dealer Agreement. Lessor acknowledges that neither the Dealer Agreement nor this assignment renders Lessor an agent of the assignee.

LESSOR: ___ASTON MARTIN OF DALLAS___ BY X ___ TITLE: _____ DATE: ___08/20/2018___

**SEE OTHER SIDE FOR OTHER IMPORTANT AGREEMENTS INCLUDING A PROHIBITION OF TRANSFER OF YOUR INTEREST**

This applies if you signed this lease in Oregon: Consumer Paper

Scanned with CamScanner

**13. Disposition Fee Waiver.** We will waive any Disposition Fee shown in Section 3 if, at the time this lease ends, you enter into a motor vehicle lease or installment sale contract that the dealer assigns to Ally.

**14. Lease Term:** 36 months.

**15. Total Allowed Mileage.** The total mileage allowed on the odometer at lease end is 30089 miles.
**Extra Miles.** The total allowed mileage includes 30024 extra miles that you are buying at $ N/A per mile. If this lease ends on or after the start of the next-to-last monthly period, we will give you a credit for each unused extra mile you bought. There will be no credit if the lease ends earlier, you buy the vehicle, or the vehicle is a total loss.

Vermont and the vehicle is new, or (3) you signed this for a personal, family, household and you are an individual leasing for a personal, family, household or enters agricultural purpose: Unless Lessor makes a written warranty on the date of this lease, LESSOR MAKES NO IMPLIED WARRANTY THAT THE VEHICLE IS FIT FOR A PARTICULAR PURPOSE. If Lessor makes a written warranty AND THERE IS NO IMPLIED WARRANTY OF MERCHANTABILITY. or enters into a service contract within 90 days from the date of this lease, then any implied warranty of merchantability and any warranty that the vehicle is fit for a particular purpose are limited in duration to the longer of the term of the written warranty or the term of the service contract.

**18. Optional Insurance, Service Contracts, and Maintenance Agreements.** We do not require any of the Insurance, products, or services listed in this section. Your decision to buy them or not buy them is not a factor in our decision to approve this lease. We will try to get any optional insurance coverage(s) that you initial below. A notice you receive when you sign this lease describes the coverage(s) in greater detail. Life insurance and disability insurance may not cover taxes and other amounts due besides the base monthly payment.

| Optional Insurance | Coverage | | Charge or Premium | Provider | By initialing below, you indicate you want the insurance |
|---|---|---|---|---|---|
| Life Insurance (Monthly Payment Lease Only) | ___Lessee  ___Co-Lessee Coverage is for lease term  Coverage limit  $ | N/A | $ N/A | N/A | Lessee/Co-Lessee initials ___/___ |
| Disability Insurance (Monthly Payment Lease Only) | Lessee Coverage is for lease term  Monthly Coverage limit $ ___ N/A Months ___ Coverage limit   $ | N/A  N/A Miles N/A | $ N/A | N/A | Lessee/Co-Lessee initials ___/___ Lessee/Co-Lessee initials ___/___ |

| Other Optional Product or Service | Term | |
|---|---|---|
| N/A | N/A Months, | N/A Miles |
| N/A | N/A Months, | N/A Miles |

### Signatures

**THIS IS THE ENTIRE AGREEMENT.** This lease, including the front and back of this form, contains the entire agreement between you and us relating to the lease of the vehicle. Any change to this lease must be in writing, and we must sign it. No oral changes are binding.

LESSEE: X [signature]  BY: X _____  CO-LESSEE: X  N/A

We may delay or refrain from enforcing any of our rights under this lease without losing them.

**NOTICE TO LESSEE.** 1. DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT.  2. YOU ARE ENTITLED TO A COPY OF THIS AGREEMENT.
YOU AGREE TO THE TERMS OF THIS LEASE. YOU CONFIRM THAT BEFORE YOU SIGNED THIS LEASE, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT.
YOU CONFIRM THAT YOU SIGNED THIS AGREEMENT AND RECEIVED A COPY AT DALLAS (city)  TX (state)  ON 08 (month) 20 (day) 2018 (year)

LESSEE: X [signature]  BY: X _____  CO-LESSEE: X  N/A

Lessor agrees to the following: (1) Lessor accepts this lease. (2) If a party is identified in this lease as the intended assignee ("Intended Assignee"), Lessor (i) assigns all right, title, and interest in this lease to the Intended Assignee, under the terms of the Lease Plan Dealer Agreement in effect from time to time with the assignee (the "Dealer Agreement"), and (ii) assigns all right, title, and interest in the leased vehicle to the Intended Assignee, or its designee, under the terms of the Dealer Agreement. Lessor acknowledges that neither the Dealer Agreement nor this assignment renders Lessor an agent of the assignee.

LESSOR:  ASTON MARTIN OF DALLAS   BY: X  TITLE: _____   DATE: 08/20/2018

**SEE OTHER SIDE FOR OTHER IMPORTANT AGREEMENTS INCLUDING A PROHIBITION OF TRANSFER OF YOUR INTEREST**

This applies if you signed this lease in Oregon: Consumer Paper

### Authorization For Automatic Electronic Payments - Optional - Monthly Payment Lease Only

You have the option to ask that your monthly payments be transferred to us automatically and electronically from your checking or savings account when each monthly payment is due. We do not charge for this optional service. If you elect this optional service, we will send you a confirmation letter that will tell you the due date of the first payment that will be withdrawn. If a due date falls on a weekend or holiday, funds will be withdrawn on the next business day. If the amount to be transferred will vary from the previous transfer, we will reflect the amount to be transferred on your statement.

To elect this optional service, please complete the authorization below.

**Authorization**

Name of your financial institution ("Bank"):  N/A

ABA routing number:  N/A

Bank account number:  N/A

☐ Checking account   ☐ Savings account - Please contact your financial institution for assistance

Name(s) on account:  N/A

You authorize and request us (lessor, any assignee, and any servicer) to initiate electronic debit entries or use any other commercially reasonable accepted practice to charge your Bank account identified above. You authorize and request Bank to honor debit entries we initiate and debit these charges to your account. This authorization relates to your monthly lease payment. This authorization will remain in effect until all amounts related to the lease are paid in full or until you cancel this authorization. To cancel, you must call us at 1-888-925-2559 at least three business days before the next payment due date. This is the only way you may cancel this authorization.

Lessee: X _____

Anyone else whose signature is required to withdraw funds from the Bank account: X _____

AF-671-MULTISTATE-2  8/12  CO, LA, MA, NE, OK, OR, TX, VT, WV, WY
Copyright 2012 Ally Financial. All Rights Reserved. SmartLease is a registered service mark of Ally Financial.                                Lease Agreement

Ally Financial - Original     Customer - Blue     Dealer - Yellow     Filing - Green

Scanned with CamScanner

**EXHIBIT B**



*Andrew Ross – Attorney at Law*
*(214) 965-8703 Direct Line*
*(214) 965-8701 Facsimile*
*aross@allenstewart.com*

December 3, 2018

**SENT VIA CERTIFIED MAIL**
*Tracking Number: 7017 3040 0000 7865 2604*

Aston Martin Lagonda of North America Inc.
ATTN: Legal Department
9920 Irvine Center Drive
Irvine, CA  92618

        **RE:**    **Amit Patel vs Aston Martin Lagonda of North America, Inc.**
                Vehicle:    2018  Aston Martin DB11
                VIN#:      SCFRMFAV8JGL03806

To Whom It May Concern:

    Please note that the above-named individual has retained our services against your company pursuant to the Federal Magnuson-Moss Warranty Act (hereinafter referred to as "Warranty Act") with regard to the above-listed vehicle.

    **As you have been formally notified of our legal representation of Mr. Amit Patel, you are instructed not to contact our client under any circumstances.  Please direct all inquiries to this office.  If you fail to act in conformity with this directive, injunctive relief will be sought against you.**

    **Pursuant to 15 U.S.C. 2310(d), you are hereby notified that any settlement made with our client requires payment of our attorneys' fees.  As such, if you attempt to settle directly with our client and do not make arrangements for payment of our attorneys' fees, we will file suit against you.  Lastly, you are hereby notified of our attorneys' lien.**

    My client has experienced multiple defects in their vehicle.  Your company, through your authorized dealerships, have been unable to repair their vehicle within a reasonable time and/or

after having a reasonable numerous of attempts to repair it.  As such, my client seeks relief under the Warranty Act as you have breached both your written warranty and the implied warranty of merchantability.  The defects experienced by my client include, but are not limited to:

- Defective engine as evidenced by repeated illumination of check engine light, rough idle, vehicle intermittently stalls, noise;
- Defective electrical system as evidenced by rattle from rear seat area, passenger seat heating/cooling turns on by itself intermittently, alarm goes off intermittently when driver door opened, driver door easy access does not work and key fob must be used to open door, illumination of key not detected indicator when key is inside car and doors will not open, drivers windows closes slower than passenger window, driver's window will not roll all the way up;
- Defective brake system as evidenced by excessive squeak noise; and
- Any additional complaints made by our clients, whether or not they are contained in your company's records or on any dealer repair orders.

The defects listed above constitute a substantial impairment of the use, value and/or safety of the vehicle.  As a result of these defects, my client has justifiably lost confidence in the vehicle.  You are hereby notified that my client is revoking acceptance of this vehicle.  My client has directed me to demand the cancellation of the contracts and the return of all funds paid towards this vehicle, including any trade-in value given, all collateral charges, finance charges and incidental and consequential damages.

Please be advised that pursuant to Uniform Commercial Code § 2-711(3) my client has a security interest in the vehicle for return of the amounts described above, plus expenses in handling and inspecting the vehicle. Until you pay this amount, my client will hold the car and use it to the extent necessary to preserve it, to protect the security interest, and to minimize your damages.  Moreover, my client needs return of the monies listed above before a substitute vehicle can be acquired.  In addition, any attempt by you or your agents to repossess the car will be wrongful and may subject you to liability for conversion and for wrongful repossession under Uniform Commercial Code §§ 9-503 and 9-507, as well as any other applicable remedies.

If the seller or, if applicable, the assignee, or any creditor subject to the FTC Holder Rule has filed a financing statement covering the goods, I demand, pursuant to Uniform Commercial Code § 9-404, that you file a termination statement within ten (10) days to terminate your security interest, and forward a copy to me.  Since my client has revoked acceptance, there is no outstanding secured obligation.  If you do not file a termination statement within ten (10) days and cooperate in removing the lien, you may be liable under Uniform Commercial Code § 9-404(1) in the amount of $100.00, plus any loss caused to my clients by your failure to do so.

     To avoid any litigation, my client merely requests the return of fifty (50) percent of the cash value of the vehicle, based at the time my client leased it, as compensation for its diminished value due to its defects and payment of our attorneys' fees pursuant to the fee-shifting provisions of the Federal Magnuson-Moss Warranty Act. Our attorneys' fees are minimal at this stage and we would prefer to resolve this matter without the need for any more time spent on our part or on the part of your attorneys. A great deal of time, money and effort could be saved by all parties involved with a quick resolution of this claim.

     Accordingly, if you wish to resolve this matter amicably, please feel free to contact my office. If the matter has not been resolved within fourteen (14) days from the date of this letter, a lawsuit will be filed.

                                          Sincerely,

                                          Andrew Ross
                                          Attorney at Law

AR/tj
cc: Mr. Amit Patel

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY | |
|---|---|---|
| ■ Complete items 1, 2, and 3.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X [signature] | ☐ Agent<br>☐ Addressee |
| | B. Received by (Printed Name) | C. Date of Delivery |
| 1. Article Addressed to:<br>Aston Martin Lagonda of North America<br>ATTN: Legal Department<br>9920 Irvine Center Drive<br>Irvine, CA 92618 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No<br>[DEC 14 2018 IRVINE CA 92619 USPS stamp] | |
| ‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖<br>9590 9402 4449 8248 7495 15 | 3. Service Type<br>☐ Adult Signature<br>☐ Adult Signature Restricted Delivery<br>☒ Certified Mail®<br>☐ Certified Mail Restricted Delivery<br>☐ Collect on Delivery | ☐ Priority Mail Express®<br>☐ Registered Mail™<br>☐ Registered Mail Restricted Delivery<br>☒ Return Receipt for Merchandise |
| 2. Article Number (Transfer from service label)<br>7017 3040 0000 7865 2604 | ☐ Collect on Delivery Restricted Delivery<br>☐ ___ Mail<br>☐ ___ Mail Restricted Delivery (over $500) | ☐ Signature Confirmation™<br>☐ Signature Confirmation Restricted Delivery |
| PS Form 3811, July 2015 PSN 7530-02-000-9053 | | Domestic Return Receipt |